UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN NOEL,                          :
                                     :CIVIL ACTION NO. 3:12-CV-50
            Plaintiff,               :
                                     :(JUDGE CONABOY)
            v.                       :
                                     :
FIRST PREMIER BANK and               :
X,Y,Z CORPORATIONS,                  :
                                     :
            Defendants.              :
                                     :

---

### **MEMORANDUM**

Here we consider the Motion of Defendant, First Premier Bank
to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P.
12(b)(6) or, in the Alternative, Motion for a More Definite
Statement Pursuant to Fed. R. Civ. P. 12(e).  (Def.'s Mem. Supp.
Mot. to Dismiss, ECF Doc. 5.)  A supporting brief is attached to
the motion.[1]  (Doc. 5 at 3-24.)  On February 5, 2012, Plaintiff
filed a brief in opposition to Defendant First Premier Bank's
motion to dismiss.  (Pl.'s Mem. Opp. Mot. to Dismiss, ECF Doc. 9.)
Defendant filed a reply brief on February 17, 2012.  (Def.'s Reply
Br, ECF Doc. 12.)  Therefore, this motion is fully briefed and ripe
for disposition.  For the reasons discussed below, we grant
Defendant's motion.

### **I. Background**

In his Complaint, Plaintiff alleges that Defendant First

---

[1]  Plaintiff is advised that pursuant to Local Rule 5.1(h) of
Local Rules of Court of the Middle District of Pennsylvania,
"[e]ach motion and each brief shall be a separate document."

Premier Bank ("Defendant") violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., because it failed to mark Plaintiff's debt as disputed when reporting the results of a dispute investigation to one or more consumer reporting agencies. (Pl.'s Compl. ¶¶ 21-25, 42, Doc. 1 at 12, 16; Doc. 9 at 1-2.) Specifically Plaintiff asserts that Defendant violated 15 U.S.C. § 1681s-2(b). (Doc. 1 at 10; Doc. 9 at 4.)

According to Plaintiff, Defendant placed "derogatory information on Plaintiff's credit report against which Plaintiff has raised certain disputes." (Doc. 9 at 1.) Plaintiff reports the basis of his dispute was the amount of the balance, interest, finance charges and the existence of a contract to support the balance, interest rate and finance charges.[2] (*Id.*) Plaintiff contends that the amount of the balance, interest and finance charges were incorrectly stated on Plaintiff's report. (*Id.*)

Plaintiff states that he raised the disputed matters in writing with Defendant and his "disputes were very clear and precise." (*Id.*) Plaintiff further avers that Defendant did not respond to Plaintiff's written concerns or take action based on them. (*Id.* at 2.) Plaintiff contends that, because of Defendant's inaction, he attempted to dispute the information directly with the credit reporting agency. (*Id.*) He maintains that when the credit

---

[2] The account in question is a credit card account. (*See* Doc. 1 at 28.)

reporting agency contacted Defendant, Defendant verified the information to the agency but did not add that the account was in a disputed status. (*Id.*)

Defendant identifies certain exhibits attached to Plaintiff's Complaint: two letters from Plaintiff to Defendant dated December 17, 2010, and April 1, 2011; a letter from Defendant to Plaintiff dated January 10, 2011; a letter from Plaintiff to TransUnion (credit reporting agency) dated August 23, 2011; and a letter from TransUnion to Plaintiff dated October 14, 2011. (Doc. 5 at 5 (citing Defendant's Exhibits B-F).)

The correspondence dated December 17, 2007, identifies the account number with an alleged balance of $417. (Doc. 5 at 49.) The letter, titled "DISPUTE AND REQUEST FOR INVESTIGATION," states the following:

> I wish to dispute the above referenced account. The charges are excessive and inflated and not warranted by any existing contract.
>
> I am requesting proof of the alleged debt. I request a copy of the initial contract, and proof of late fees, interest, etc.
>
> I am requesting an investigation of this account pursuant to the Fair Credit Reporting Act, 15 USC 1681 s-2.
>
> This is a disputed account, and you must mark it as disputed on my credit report.

(Doc. 5 at 49.)

On January 10, 2011, Defendant sent Plaintiff a letter

3

informing Plaintiff that he could dispute the information directly with one of the listed consumer reporting agencies or directly with Defendant in writing.  (Doc. 5 at 55.)  If Plaintiff chose to dispute the information with Defendant, he was instructed that the "[w]ritten correspondence should include your name, account number, the specific information that is being disputed, an explanation for the basis of the dispute, and all supporting documentation or other information reasonably required to substantiate the basis of the dispute."  (*Id.*)  Plaintiff was further informed that, by example, the documentation may include "a copy of the relevant portion of the consumer report that contains the allegedly inaccurate information; a police report; a fraud or identity theft affidavit; a court order; or account statements."  (*Id.*)

Another letter from Plaintiff to Defendant dated April 1, 2011, is substantively identical to Plaintiff's December 17, 2011, correspondence.  (Doc. 5 at 51.)

On August 23, 2011, Plaintiff addressed a letter to Trans Union Corporation.  (Doc. 5 at 53.)  The letter, titled "DISPUTE AND REQUEST FOR INVESTIGATION," states the following:

> I wish to dispute the above referenced account.  The charges are excessive and inflated and not warranted by any existing contract.
>
> I have requested proof of the alleged debt.  I request a copy of the initial contract, and proof of late fees, interest, etc., from the original alleged creditor.  I have requested proof of the balance from the

4

> alleged creditor.  The alleged creditor has
> failed to produce any contract proof of the
> balance.
>
> I am requesting an investigation of this
> account.

(Doc. 5 at 53.)

On October 14, 2011, TransUnion responded to Plaintiff, informing him that its "investigation of the dispute is now complete."  (Doc. 5 at 57.)  Although the letter states the results of the investigation are listed, some information is redacted and other is illegible.  The letter states that "[i]f our investigation has not resolved your dispute, you may add a 100-word statement to your report."  (Doc. 5 at 57.)  The letter also states that if there was a change to Plaintiff's credit history resulting from TransUnion's investigation, or if Plaintiff added a consumer statement, he could request that TransUnion send an updated report to those who received his credit report within the last two years for employment purposes, or within the last one year for any other purpose.  (*Id.*)

On December 13, 2011, Plaintiff filed this action in the Court of Common Pleas of Schuylkill County, Pennsylvania, asserting violations of the Fair Credit Reporting Act (specifically 15 U.S.C. § 1681s-2(b) et seq.).  (Doc. 1 at 8-21.)  Plaintiff claims actual damages in the amount of "$1.00 more or less," and also claims entitlement to $1,000.00 in statutory damages pursuant to 15 U.S.C.

§ 1681 et seq. and attorney fees.  (Doc. 5 at 18-19.)  Defendant

removed the action to this Court on January 9, 2012.  (Doc. 1.)

    In response to the Complaint, Defendant filed the motion to

dismiss under consideration here.  (Doc. 5.)  As noted above, the

motion is now fully briefed and ripe for disposition.

## II. Discussion

    With this motion Defendant alternatively seeks dismissal of

Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) or a more definite statement pursuant to Federal Rule of

Civil Procedure 12(e).  (Doc. 5.)  We will first address

Defendant's motion to dismiss.

a.    *Motion to Dismiss Standard*

    In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009),

the Third Circuit Court of Appeals set out the standard applicable

to a motion to dismiss in light of the United States Supreme

Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433

(2007), and *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937

(2009).

> "[T]o survive a motion to dismiss, a
> complaint must contain sufficient factual
> matter, accepted as true to 'state a claim
> that relief is plausible on its face.'"
> *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550
> U.S. at 570).  The Court emphasized that
> "only a complaint that states a plausible
> claim for relief survives a motion to
> dismiss."  *Id.* at 1950.  Moreover, it
> continued, "[d]etermining whether a complaint
> states a plausible claim for relief will . .
> . be a context-specific task that requires

6

> the reviewing court to draw on its judicial
> experience and common sense." *Id.* (citation
> omitted).

*McTernan,* 577 F.3d at 530.  The Circuit Court discussed the effects

of *Twombly* and *Iqbal* in detail and provided a road map for district

courts presented with a motion to dismiss for failure to state a

claim in a case filed just a week before *McTernan*, *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part
> analysis.  First, the factual and legal
> elements of a claim should be separated.  The
> District Court must accept all of the
> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,
> 129 S. Ct. at 1949.]  Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal

conclusions are not entitled to the same deference as well-pled

facts.  In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly*, 550 U.S. at 555) (not precedential).

**b. Defendant's Rule 12(b)(6) Motion**

Defendant raises several arguments in support of its motion. Defendant first asserts that there is no private cause of action against a furnisher of information to a credit reporting agency pursuant to 15 U.S.C. § 1681s-2(a).  (Doc. 5 at 7.)  The remainder of Defendant's arguments go to whether 15 U.S.C. § 1681s-2(b), which does allow a private cause of action, can support Plaintiff's claim.

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681; *TRW v. Andrews*, 534 U.S. 19, 23 (2001)).  The FRCA ("the Act") requires credit reporting agencies ("CRAs") "to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'" *Saunders v. Branch Banking and Trust Co.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)).  The Act also imposes duties on those who provide information ("furnishers") to CRA's.  The Third

Circuit Court of Appeals recently summarized the purpose of the FCRA and the subsections at issue here in *SimmsParris v. Countrywide Financial Corp.*, 652 F.3d 355, 357 (3d Cir. 2011).

> The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortex v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quotation marks omitted). The FCRA places certain duties on those who furnish information to consumer reporting agencies.  Under 15 U.S.C. § 1681s-2(a), for instance, the furnisher of information has a duty to provide accurate information. Additionally, 15 U.S.C. § 1681s-2(b) imposes a duty to conduct an investigation into the completeness and accuracy of the information furnished in certain circumstances.  *See id.* at 714 ("a consumer must first inform the credit agency that s/he disputes the information," after which "[t]he credit reporting agency must reinvestigate promptly based on that dispute").

*SimmsParris*, 652 F.3d at 357.

## 1.    Fair Credit Reporting Act Private Right of Action

The parties agree that there is no private cause of action under certain provisions of the Fair Credit Reporting Act, including 15 U.S.C. § 1681s-2(a).  (Doc. 5 at 11; Doc. 9 at 7.)

*SimmsParris* clarifies that a private individual cannot assert a claim for a violation of § 1681s-2(a), "as such claims are available only to the Government."  652 F.3d at 358 (citing 15 U.S.C. §§ 1681s-2(c)-(d)).  The only section that can be enforced by a private citizen seeking to recover damages caused by a

furnisher of information is § 1681s-2(b).  *Id.* (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 1009); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008)).

Plaintiff cites 15 U.S.C. § 1681s-2(a)(1)(D)(3) in support of the proposition that "[a]t the moment Defendant verified the information about the account to the credit reporting agency(ies), Defendant had a statutory duty to mark the account as disputed on Plaintiff's credit report."[3]  (Doc. 9 at 2.)  Despite this citation, Plaintiff maintains his action is based on 15 U.S.C. § 1681s-2(b) which does allow for a private cause of action (Doc. 9 at 5).

Because 15 U.S.C. § 1681s-2(b) allows for a private cause of action, we will now address whether this section of the Fair Credit Reporting Act can support Plaintiff's claim.

## 2.   **15 U.S.C. § 1681s-2(b)**

Defendant, maintaining it is not liable to Plaintiff under 15 U.S.C. § 1681s-2(b), presents the following arguments: 1) Defendant

---

[3]   Because the cited subsection does not exist in § 1681s-2, we assume Plaintiff is referring to 15 U.S.C. § 1681s-2(a)(3) which provides that the duty of furnishers of information to provide accurate information includes the duty to provide notice of a dispute: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

was under no duty to investigate Plaintiff's dispute regarding his account until it received notice of the dispute from a Consumer Reporting Agency; 2) as a data furnisher, Defendant is not liable to Plaintiff for failing to report to a Consumer Reporting Agency in response to an Automated Consumer Dispute Verification (ACDV), the fact that the consumer had previously disputed the debt directly to the data furnisher; and 3) if the Court were to agree with those courts which have found a private cause of action based on a data furnisher's nonreporting of a dispute, Plaintiff would have to allege a bona fide dispute which he has not done here. (Doc. 5 at 12-22.)

Section 1681s-2(b) addresses the "[d]uties of furnishers upon notice of a dispute" and provides in pertinent part as follows.

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate,

11

> report those results to all other
> consumer reporting agencies to which the
> person furnished the information and
> that compile and maintain files on
> consumers on a nationwide basis; and
>
> (E) if an item of information disputed
> by a consumer is found to be inaccurate
> or incomplete or cannot be verified
> after any reinvestigation under
> paragraph (1), for purposes of reporting
> to a consumer reporting agency only, as
> appropriate, based on the results of the
> reinvestigation promptly--
>
> > (i) modify that item of
> > information;
> >
> > (ii) delete that item of
> > information; or
> >
> > (iii) permanently block the
> > reporting of that item of
> > information.

15 U.S.C. § 1681s-2(b)(1).  "[N]otice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," § 1681s-2(b)(1), means notice from the consumer reporting agency to the furnisher of information.  15 U.S.C. § 1681i(a)(2)(A).  Thus, the duties placed on furnishers of information pursuant to § 1681s-2(b)(1) attach upon notice given by a consumer reporting agency and cannot come directly from the consumer.  *SimmsParris*, 652 F.3d at 358 (citations omitted). *SimmsParris* also noted that it is "only when the furnisher fails to undertake a reasonable investigation following notice [from the

12

Consumer Reporting Agency] that it may become liable to a private
litigant under § 1681s-2(b).  652 F.3d at 359.  The burden of
showing the investigation was unreasonable is on the plaintiff.
*Chiang*, 595 F.3d at (citing *Gorman*, 584 F.3d at 1157; *Westra v.
Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005);
*Johnson v. MBNA Am. Bank, NA*, 357 F.3d 427, 429-31 (4th Cir. 2004)).

    Here Plaintiff's Complaint is based upon Defendant's failure
to state that his account was in a disputed status when Defendant
responded to the CRA inquiry.  (Pl.'s Compl. ¶¶ 21-25, 42, Doc. 1
at 12, 16; Doc. 9 at 1-2.)  Placed within the statutory framework
set out above, Plaintiff's argument appears to be that Defendant's
investigation following the CRA inquiry should have found that,
because Defendant had not reported to the CRA in the first instance
that the debt was disputed, the information Defendant had
previously provided to the CRA was "incomplete or inaccurate"--a
finding which would have triggered its obligation to report those
results to all consumer reporting agencies to which the furnisher
had provided the information and modify the information pursuant to
§§ 1681s-2(b)(1)(D)-(E)(i).  This then reduces to the question of
whether Defendant failed to investigate and modify inaccurate
information following the CRA inquiry when it failed to add the
notation to the information previously provided to the CRA that the
consumer had directly disputed account information with the
furnisher before disputing the debt with the consumer reporting

13

agency.

As set out previously in the margin, 15 U.S.C. § 1681s-2(a)(3) provides that the duty of furnishers of information to provide accurate information includes the duty to provide notice of a dispute: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."  Also as noted previously, a violation of this section is not actionable by a consumer.  Therefore, the next inquiry is the interplay of this section with § 1681s-(2)(b) which does give rise to a direct action by a consumer.

The Third Circuit Court of Appeals has not ruled on the issue before us.  Plaintiff asserts that other circuits and a district court within this circuit have concluded that failure to mark an account disputed "at the time of verification is a per se violation of FCRA."  (Doc. 9 at 2 (citing *Saunders*, 526 F.3d 142;  *Smith v. HireRight Solutions, Inc.*, No. 09-6007, 2010 WL 2270541 (E.D. Pa. June 7, 2010)).)[4]  We reject Plaintiff's argument that any failure

---

[4]  In his opposition brief, Plaintiff cites the *Smith v. HireRIght* case at 2010 WL 2270541.  (Doc. 9 at 2, 6.)  The cited opinion addresses the defendant's motion to transfer venue and does not cite to *Saunders* or discuss the FCRA dispute issue.  However, another opinion in the case, *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010), addresses the matter at issue here, and we therefore assume that this is the Memorandum and Order

to mark an account as disputed at the time of verification to a CRA is a per se violation of the FCRA.  (*See* Doc. 9 at 2.)

As noted previously, the purpose of the FCRA is to "'meet[] the needs of commerce' and be 'fair and equitable to the consumer.'"  *Saunders,* 526 F.3d at 147 (quoting 15 U.S.C. § 1681(b)).  It would not meet the needs of commerce to allow *any* dispute by a consumer in the first instance--a dispute that did not at least meet the requirements of a bona fide dispute under relevant caselaw, *see*, *e.g.*, *Gorman*, 584 F.3d at 1163*; Saunders*, 526 F.3d at 148 (listing courts requiring claimed inaccuracy to create a materially misleading impression), or the requirements of §§ 1681s-2(a)(8)(D),(F)--to trigger an absolute obligation on the part of the furnisher to report the dispute to the CRA.  As noted in *Saunders*, when a furnisher responds to a dispute verification form from a CRA and relates an ongoing dispute, the CRA records the dispute in the credit report and does not include the derogatory information in assessing the credit score.  526 F.3d at 150.  In this scheme, if a consumer wanted to avoid having derogatory information included in his credit score assessment, he could file a meritless dispute with the creditor/furnisher and, if the creditor/furnisher were obligated to include information that the account was disputed, no matter how frivolous, the CRA would not include the derogatory information in its assessment.  This result

upon which Plaintiff relies.

15

clearly does not satisfy the goal of "meeting the needs of commerce for consumer credit, personnel, insurance, and other information." 15 U.S.C. § 1681(b).  Rather than being "fair and equitable to the consumer," *id.*, a system which allows a consumer to inflate his credit score and thus derive a benefit from filing a frivolous dispute allows the consumer to do an end-run on the purpose of the statutory scheme.

   We similarly reject Defendant's argument that a data furnisher cannot be liable to a consumer plaintiff for failing to report to a Consumer Reporting Agency the fact that the consumer had previously disputed the debt directly to the data furnisher.  (Doc. 5 at 14.) This argument is based on the proposition that information about an account is not "incomplete or inaccurate" for purposes of § 1681s-2(b)(1)(D) if the information does not include an account holder's dispute.  (Doc. 5 at 15.)  We agree with *Saunders* assessment: "Certainly, if a consumer has a meritorious dispute . . . the consumer's failure to pay the debt does not reflect financial irresponsibility."  526 F.3d at 150.  As the cases demonstrate, in some situations, the FRCA's goal of promoting credit reporting procedures that are "'fair and equitable to the consumer,'" *Saunders*, 526 F.3d at 147 (quoting 15 U.S.C. § 1681(b)), would not be met if a meritorious dispute were not reported to a CRA. Having rejected Plaintiff's per se violation argument and Defendant's argument that a furnisher's failure to report an

16

account as disputed can never lead to a furnisher's liability to a consumer, we turn to a review of cases and statutory provisions which may point to an appropriate disposition of the issue before us.  As noted above, *Saunders* focused on the need for the claimed inaccuracy to create a misleading impression.  526 F.3d at 148. The Fourth Circuit referred to its earlier holding in *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001), for the proposition that "a report is inaccurate not only when it is patently incorrect but also when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Saunders*, 526 F.3d at 148.  Further, *Saunders* "assume[d] without deciding that a furnisher incurs liability under § 1681s-2(b) only if it fails to report a meritorious dispute."  *Id.* at 151.

Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), relied upon *Saunders* and agreed that a furnisher's failure to report a dispute *may* create a private right of action under § 1681s-2(b).  584 F.3d at 1162.  *Gorman* concluded that

> a furnisher does not report "incomplete or inaccurate" information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.  It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b).

17

*Id.* at 1163 (citation omitted); *see also Van Veen v. Equifax Information*, Civ. No. 10-1635, ---F. Supp. 2d---, 2012 WL 556063, at * 4 (E.D. Pa. Feb. 14, 2012) (quoting *Gorman*, 584 F.3d at 1163).

We conclude that *Gorman's* determination that failing to report a meritless dispute does not give rise to a violation of § 1681s-2(b) is consistent with the purpose of the FCRA and is supported by requirements concerning a consumer dispute in other sections of the Act.  We now look for guidance in determining whether a dispute is bona fide or meritless.

Section 1681s-2(a)(3) addresses the duty to report a dispute but does not address the nature of the dispute: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."  Although this subsection does not contain a bona fide dispute requirement, the section of the Act which sets out regulatory requirements concerning a consumer's direct dispute with a furnisher provides guidance as to the required contents of the dispute and the significance of a frivolous or irrelevant dispute.  *See* 15 U.S.C. §§ 1681s-2(a)(8)(D), (F).  Subsection 2(a)(8)(D) addresses the consumer's submission of a notice of dispute to the furnisher.

> A consumer who seeks to dispute the accuracy
> of information shall provide a dispute notice

18

directly to such a person at the address
specified by the person for such notices
that--

(i) identifies the specific information
that is being disputed ;

(ii) explains the basis for the dispute;
and

(iii) includes all supporting
documentation required by the furnisher
to substantiate the basis of the
dispute.

15 U.S.C. § 1681s-2(a)(8)(D).

The next subsection spells out the duty of a person after
receiving a dispute to investigate the disputed information, review
all relevant information provided by the consumer with the notice,
report the results of the investigation to the consumer, and notify
each CRA if the investigation finds that the information reported
was inaccurate.  15 U.S.C. § 1681s-2(a)(8)(E).

Section 1681s-2(a)(8)(F) addresses frivolous or irrelevant
disputes.

(i) In general

This paragraph shall not apply if the person
receiving a notice of a dispute from a
consumer reasonably determines that the
dispute is frivolous or irrelevant,
including--

(I) by reason of the failure of a
consumer to provide sufficient
information to investigate the disputed
information; or

(II) the submission by a consumer of a
dispute that is substantially the same

19

> > as a dispute previously submitted by or
> > for the consumer, either directly to the
> > person or through a consumer reporting
> > agency under subsection (b) of this
> > section, with respect to which the
> > person has already performed the
> > person's duties under this paragraph or
> > subsection (b), as applicable.
>
> > (ii) Notice of determination
>
> > Upon making any determination under clause
> > (i) that a dispute is frivolous or
> > irrelevant, the person shall notify the
> > consumer of such determination not later than
> > 5 business days after making such
> > determination, by mail, or, if authorized by
> > the consumer for that purpose, by any other
> > means available.

15 U.S.C. § 1681s-2(a)(8)(F).

Here we do not decide that Defendant's correspondence of January 10, 2011, (Doc. 5 at 44) constitutes a notice of determination pursuant to § 1681s-2(a)(8)(F)(ii).  However, we deem it appropriate to use the requirements set out in § 1681s-(2)(a)(8)(D) and § 1681s-(2)(a)(8)(F)(i) to determine whether Plaintiff's dispute was bona fide or meritless.  Other courts have considered the requirements of § 1681s-(2)(a)(8) in determining whether a defendant has violated § 1681s-(2)(b).  "There is no duty to reinvestigate a consumer complaint lodged directly against or through a consumer reporting agency, when the dispute is determined to be frivolous or irrelevant . . . ."  *Groves v. U.S. Bank, N.A.*, No. 8:10-CV-2664-T-17TGW, 2012 WL 360197, at *7 (M.D. Fla. Feb. 2, 2012) (citing 15 U.S.C. § 1681s-2(a)(8)(F)(i)(I)).  Similarly, we

conclude that if a consumer does not comply with the submission requirements of § 1681s-2(a)(8)(D) or if a dispute is determined to be frivolous or irrelevant under § 1681s-2(a)(8)(F), the furnisher has no duty to report the debt as disputed under § 1681s-2(a)(3) and the furnisher is not subject to liability under § 1681s-(2)(b).

Here Plaintiff first submitted a "DISPUTE AND REQUEST FOR INVESTIGATION" on December 17, 2010. (Doc. 5 at 42.) Plaintiff stated the charges are "excessive and inflated and not warranted by any existing contract." (*Id.*) He also requested a copy of the initial contract, proof of late fees and interest, and an investigation pursuant to the FCRA § 1681s-2. (*Id.*) Finally, Plaintiff stated "[t]his is a disputed account and you must mark it as disputed on my credit report." (*Id.*) Defendant's response dated January 10, 2011, advised Plaintiff that the written correspondence concerning his dispute should include Plaintiff's

> name, account number, the specific information that is being disputed, an explanation for the basis of the dispute, and all supporting documentation or other information reasonably required to substantiate the basis of the dispute. The documentation may include a copy of the relevant portion of the consumer report that contains the allegedly inaccurate information; a police report; a fraud or identity theft affidavit; a court order; or account statements.

(Doc. 5 at 44.)

Plaintiff did not provide Defendant with any additional information. On April 1, 2011, Plaintiff sent another "DISPUTE AND

REQUEST FOR INVESTIGATION" substantively identical to the December 17, 2010, correspondence.  (Doc. 5 at 43.)  On August 3, Plaintiff corresponded directly with TransUnion Corporation regarding disputing the account with Defendant on the basis that "the charges are excessive and inflated and not warranted by any existing contract" and advising TransUnion that he had requested a copy of the contract and proof of fees and interest from Defendant.  (Doc. 5 at 45.)

Because Plaintiff provided such scant information to Defendant in his initial correspondence and, following receipt of Defendant's correspondence, did not provide any additional information, we conclude Plaintiff has not satisfied the requirements of § 1681s-2(a)(8)(D)(iii) because Plaintiff did not submit, as requested by Defendant, "all supporting documentation or other information reasonably required to substantiate the basis of the dispute." (Doc. 5 at 44.)  Similarly, Plaintiff's request may be deemed frivolous or irrelevant pursuant to § 1681s-2(a)(8)(F)(i)(I) because Plaintiff failed to provide sufficient information to investigate.  Plaintiff does not state why he believes the charges, late fees, interest, "etc." are "excessive and inflated" other than to state they are "not warranted by any existing contract."  (Doc. 5 at 43.)  He does not state what charges are "inflated," or why he believes the late fees and interest charged "are not warranted." (*Id.*)

Plaintiff's argument that his dispute was bona fide is not persuasive.  At one point in his opposition brief, Plaintiff states that his Complaint, the exhibits attached thereto and his memorandum "clearly show that Plaintiff was legitimately questioning the balance, interest, finance charges and existence of a contract."  (Doc. 9 at 3.)  Elsewhere in the brief Plaintiff points to the exhibits discussed above, contending that they show he was "1) disputing the extraneous fees on the account Plaintiff allegedly had with Defendant; 2) disputing whether Plaintiff ever signed a contract of any sort with Defendant; 3) requesting a copy of that alleged contract which supposedly justified the amount of the balance."  (Doc. 9 at 5-6.)  Plaintiff's characterization of the content of the exhibits does not square with the correspondence as drafted and discussed above.  Our decision is based upon the information provided by Plaintiff to Defendant, in other words, information provided in the correspondence as drafted.  Plaintiff's after-the-fact elaboration on the information contained in the correspondence and argument based on what he *intended* to request/assert regarding the basis for his dispute are not germane to our decision.

Because we conclude that Plaintiff's correspondence with Defendant does not constitute a bona fide dispute, Plaintiff cannot succeed on his § 1681s-2(b) claim against Defendant pursuant to the relevant caselaw discussed above in that, absent a bona fide

23

dispute, Defendant had no obligation to mark the account disputed. Therefore, Defendant's motion to dismiss is appropriately granted.

In that our decision is based on the finding that Plaintiff did not present a bona fide dispute to Defendant in the first instance and thus did not trigger the requirement that the account be marked disputed, we conclude that leave to amend would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (indicating district court may deny leave to amend on the basis of futility). Here we know what information Plaintiff provided to Defendant when he directly refuted the account information.  Plaintiff's opposing brief does not identify any further correspondence with Defendant or indicate that supplemental information was provided in any form. Because the information, or lack thereof, provided to Defendant forms the basis for our decision, absent an averment that Plaintiff provided further information to Defendant, amendment would be futile.

## c.   *Additional Defendants*

Plaintiff also brings this action against X,Y,Z Corporations. Plaintiff identifies X,Y,Z Corporations as "business entities whose identities are not known to Plaintiff at this time, but which will become known upon proper discovery.  It is believed and averred that such entities played a substantial role in the commission of the acts described in the Complaint.  (Pl.'s Compl. ¶ 3(b), Doc. 1 at 8-9.)

24

The alleged wrongdoing described in the Complaint is the failure to mark the account at issue as disputed when it was reported to the CRA.  (Pl.'s Compl. ¶¶ 21-26, Doc. 1 at 12.)  Based on our finding that Plaintiff did not present a bona fide dispute, any entity which "played a substantial role in the commission of the acts described in the Complaint" would not be liable.  In other words, any entity which played a role in not marking the account disputed would not be liable to Plaintiff because in the absence of a bona fide dispute, no entity had an obligation to do so. Therefore, Plaintiff's Complaint is properly dismissed as to Defendants X,Y,Z Corporations.

## III. Conclusion

For the reasons discussed above, the Motion of Defendant, First Premier Bank to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) (Doc. 5) is granted.  Plaintiff's Complaint is dismissed as to all Defendants. An appropriate Order will be filed with this Memorandum.


S/Richard P. Conaboy

                         RICHARD P. CONABOY
                         United States District Judge

DATED: March 12, 2012

25